UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

*******************************************
In re:                                    *
                                          *    Chapter 13
ROBERT ALLAN DAVIS PIKE,                  *    Case No. 04-20846
                                          *
Debtor                                    *
*******************************************

## Memorandum of Decision

Before me for decision on stipulated facts are confirmation of the debtor's Chapter 13 plan, and a motion to dismiss filed by the lone creditor in this case, Ogden N. Lewis, personal representative of the estate of Ogden N. Lewis, Jr. (the "Estate").

## Facts

On November 14, 2001, the debtor, Robert Pike, was driving a rented car in a national park in southern Argentina. With him were his good friends Ogden N. Lewis, Jr. and Owen Breck, both of whom were visiting him. Pike lost control of the car and it crashed. Pike sustained traumatic brain injuries; Breck escaped with relatively minor injuries; Lewis died.

In September 2003 Lewis's estate sued Pike in federal district court in Maine, seeking damages for injuries and wrongful death. Pike answered the estate's complaint, but moved for dismissal on grounds of forum non conveniens. The district court denied the motion.[1]

Pike filed a voluntary Chapter 7 petition in this court on May 28, 2004, representing that he has been domiciled or maintained a residence in Maine, although he currently lives and works in Thailand. His schedules list only one creditor: the Estate. The Estate is scheduled as holding

---

[1] As of the bankruptcy petition date, discovery had not yet been taken in the district court civil action.

a disputed wrongful death claim of unknown amount.

On June 29, 2004, Pike converted his case to Chapter 13.[2] His initial plan proposed 36 monthly payments totaling $20,796.00. Aside from the trustee's commission, all funds were to be distributed to the Estate, in respect of its claim.[3] The plan proposed that the Estate's claim be "estimated for the purposes of plan confirmation and plan payments." Pike later filed an amended plan, increasing the term to 44 months and the total paid to $25,940.00. Again, all funds, save the trustee's commission, would be distributed to the Estate. The amended plan is before me for confirmation. The Chapter 13 trustee has consented to its confirmation.

Shortly after Pike noticed a confirmation hearing on the amended plan, the Estate filed its Motion to Dismiss, alternatively seeking dismissal or a suspension of all proceedings in the bankruptcy court pending a trial of its claim in the district court. Although the motion asserts several arguments, at oral argument the Estate's counsel conceded that the sole issue before me is that presented by 28 U.S.C. § 157(b)(2)(B): whether an otherwise confirmable Chapter 13 plan can be confirmed over the objection of an unsecured wrongful death creditor holding an unliquidated, disputed claim and demanding that its claim be liquidated or estimated in the district court.

I conclude that the plan can be confirmed because, for confirmation purposes, there is no need for the claim to be liquidated or estimated.

---

[2] Shortly before the conversion, the Estate moved to withdraw the reference of this bankruptcy case. Following a status hearing on December 3, 2004, the district court denied the withdrawal motion without prejudice, indicating that "trial of any claim for personal injury or wrongful death would be before [the district court]."

[3] The Estate filed a proof of claim on November 11, 2004, in the amount of "$1,299,077.38-at least."

**Discussion**

The Estate's primary argument is that the effect of confirming the plan in this case will be a final adjudication of its claim in violation of 28 U.S.C. § 157(b)(2)(B), which prohibits bankruptcy courts from estimating or liquidating wrongful death claims for purposes of distribution. The statute provides:

> (b) (1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
>   (2) Core proceedings include, but are not limited to -
>   . . .
>   (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12 or 13 of title 11 *but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;*

28 U.S.C. § 157(b)(2)(B) (emphasis added).

The Estate relies principally on In re Schepps Food Stores, Inc., 169 B.R. 374 (Bankr. S.D. Tex. 1994). The Schepps court, ruling on the debtors' motion for summary judgment on an objection to a former employee's personal injury claim, concluded it did not have jurisdiction to decide a state law statute of limitations defense because to do so could "effectively liquidate the claim for purposes of distribution." Schepps Food Stores, 169 B.R. at 377. The court recognized that claims allowance and disallowance is a core function of bankruptcy courts, 28 U.S.C. § 157(b)(2)(B). But it read the statute's personal injury/wrongful death exception to core jurisdiction to render non-core any ruling finally adjudicating the claim's merits that would "effectively liquidate the claim for purposes of distribution." Id. at 377. In so doing, it made

reference to constitutional limitations on bankruptcy judges' powers. Id.

The Supreme Court has held that, because bankruptcy judges are not Article III judges, the Constitution limits their jurisdiction. Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In an effort to ameliorate the over-broad delegation of power that was found unconstitutional in Marathon, Congress in The Bankruptcy Amendments and Federal Judgeship Act of 1984 created the core/non-core distinction found today in Title 28. Jurisdiction over bankruptcy matters is given, first, to district courts. 28 U.S.C. § 1334(a). Pursuant to 28 U.S.C. § 157(a), district courts may refer bankruptcy cases to bankruptcy judges in their district. Bankruptcy judges may enter final judgments in core matters only, unless the parties to a non-core dispute consent to the court's entry of a final judgment. Sheridan v. Michels (In re Sheridan), 362 F.3d 96, 99-100 (1st Cir. 2004); Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.), 815 F.2d 165, 167 (1st Cir. 1987).

I am unpersuaded by the Estate's contentions. For sound reasons, Schepps is not widely accepted. See e.g., In re Johns-Manville Corp., 45 B.R. 823, 825 (S.D.N.Y. 1984) (statute contains no mandate that all personal injury and wrongful death claims must be tried, and § 157(b)(2) does not exclude from the bankruptcy court's core jurisdiction estimation of personal injury and wrongful death claims for "all purposes"); In re C & G Excavating, Inc., 217 B.R. 64, 64 n.1 (Bankr. E.D. Pa. 1998) (bankruptcy court has jurisdiction to "decide corollary issues involving the validity of a proof of claim for personal injuries or wrongful death, such as whether the statute of limitation on the . . . cause of action has expired."); In re Chateaugay Corp., 111 B.R. 67, 76 (Bankr. S.D.N.Y. 1997) (bankruptcy court has jurisdiction to make

4

threshold determination whether claim, as a matter of law, exists, even if claim "sounds in personal injury, tort or wrongful death"), *rev'd on other grounds,* 146 B.R. 339 (S.D.N.Y. 1992). And Schepps' intimation that the jurisdictional exclusion is constitutionally bottomed has been justifiably criticized. In re Dow Corning Corp., 215 B.R. 346, 353-54 (Bankr. E.D. Mich. 1997) ("The 1984 amendments were enacted to resolve a number of 'problems' aside from the jurisdictional crisis created by Marathon some two years earlier. . . .  Finally, recall: many personal injury attorneys confronted the bankruptcy process, some for the first time, in the course of Johns-Manville and other asbestos bankruptcy cases.  Not enjoying the process, these attorneys lobbied to exempt, to the extent possible, personal injury claims from adjustment in bankruptcy.  Result: 28 U.S.C. § 157(b)(2)(B), (O), § 157(b)(5), and § 1411(a). . . .  There is no rational way one could constitutionally distinguish the trial of a contract claim from the trial of a tort claim in a bankruptcy court.").

In this case, at this juncture, the *amount* of the Estate's claim is simply irrelevant.  Plan confirmation is a core matter.  28 U.S.C. § 157(b)(2)(L).  Estimation of claims, if necessary, for purposes of confirmation is a core matter.  28 U.S.C. § 157(b)(2)(B); In re UAL Corp., 310 B.R. 373, 378 n.5 (Bankr. N.D. Ill. 2004).  What 28 U.S.C. § 157(b)(2)(B) makes non-core is only "the liquidation or estimation of . . . unliquidated . . . wrongful death claims against the estate for purposes of distribution."  Confirming Pike's plan requires neither estimating or liquidating the Estate's claim.[4]  And even if it did, 28 U.S.C. § 157(b)(2)(B) is clear that the claim could be

---

[4] The amount of a debtor's noncontingent, *liquidated* debts sets the limits for Chapter 13 jurisdiction, 11 U.S.C. § 109(e).  The Estate's unliquidated claim does not count against the jurisdictional limit.

In this district, assuming other requirements (e.g., good faith) are met, Chapter 13 plan confirmation is, fundamentally, a function of what the debtor contributes to the plan.  See 11 U.S.C.

5

estimated for purposes of *confirmation*,[5] just not *distribution*.[6]

Of course, I understand the Estate's predicament and its longing for a full hearing addressing the circumstances of the Lewis family's loss.[7] The time for such a hearing may come, if there are sources other than Pike's personal liability from which recompense might be had. Here, however, Pike's eligibility for Chapter 13 relief, his good faith, the lawful level of his plan contributions, and all other elements of confirmation are conceded. Nothing would be gained, no legal requirement satisfied, anent confirmation, by trial of the Estate's claim.[8]

## Conclusion

For these reasons, Pike's Chapter 13 plan will be confirmed, and the Estate's motion to dismiss denied. A separate order will issue forthwith.

---

§ 1325. The case might be different if there were a minimum percentage dividend requirement for confirmation.

[5] Estimation for confirmation purposes can be necessary in connection with Chapter 11 reorganizations. See e.g., 11 U.S.C. §§ 1126(c), 1129(a)(8).

[6] In this district, plan confirmation precedes the claim allowance/disallowance processes. See D. Me. LBR 3015-3.

[7] The Estate, after all, is not a faceless entity. It is the family of Ogden Lewis, Jr. Their loss is terrible, and their desire for a full accounting of the circumstances of his death is understandable.

[8] It is worth mentioning that, since the Estate's claim is the *only* claim that will be receiving plan dividends, it is impossible to conceive how its liquidation will be necessary for distribution purposes, either. The Estate will receive all plan distributions, less the trustee's commission. Were there one other claim, it would be necessary to liquidate claims to determine each creditors *pro rata* dividend. And, while, under these circumstances, the result of confirmation will be a final determination of what the Estate is to receive from Pike, that consequence flows from the realities of the plan, not from liquidation of its claim.

February 2, 2005            /s/ James B. Haines, Jr.
_____      _____
Date                             James B. Haines, Jr.
                                 U.S. Bankruptcy Judge